UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GLENDA GLOVER,

                Plaintiff,

  -vs-

                                                   DECISION AND ORDER
                                                   No. 05-CV-6124 (CJS)

TRACY WYNELL JONES, d/b/a
TW JONES DEVELOPMENT,
and MARVIN K. MAYE,

                Defendants.

_____

APPEARANCES

For Plaintiff:                    Christina A. Agola, Esq.
                                   Melvin Bressler, Esq., of Counsel
                                   700 First Federal Plaza
                                   28 East Main Street
                                   Rochester, New York 14614

For Defendant Tracy
Wynell Jones d/b/a TW
Jones Development:        Sharon P. Stiller, Esq.
                                   Jaeckle Fleischmann & Mugel, LLP
                                   190 Linden Oaks
                                   Rochester, New York 14625

For defendant Marvin
K. Maye:                          Robert M. Shaddock, Esq.
                                   Hiscock & Barclay LLP
                                   2000 HSBC Plaza
                                   100 Chestnut Street
                                   Rochester, New York 14604

INTRODUCTION

This is an action pursuant to the Fair Housing Act of 1968 ("FHA") as amended,

42 U.S.C. § 3601 *et seq*., and the New York Human Rights Law ("NYHRL"), Executive

Law § 290 *et seq.* Now before the Court are the following motions: 1) plaintiff's motion [#13] for leave to amend the complaint; 2) defendant Jones's motion [#18] to amend her answer, or in the alternative, for summary judgment; 3) defendant Mayes's motion [#19] to amend his answer, or in the alternative, for summary judgment; and 4) plaintiff's cross-motion [#26] for additional discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. For the reasons that follow, the parties' motions to amend are denied, plaintiff's motion pursuant to Rule 56(f) is granted, and defendants' motions for summary judgment are denied without prejudice to their being renewed, once discovery is completed pursuant to the new scheduling deadlines set forth below.

BACKGROUND

Unless otherwise noted, the following are the undisputed facts of this case which the Court will accept as true for the purpose of the subject Decision and Order. Plaintiff rented a house which was owned by defendant Tracy Wynell Jones ("Jones"), d/b/a T.W. Jones Development. Jones granted the authority to rent and manage the property to defendant Marvin Maye ("Maye").[1] (Defendants' Answer ¶ 1) Plaintiff contends that Maye discriminated against her on the basis of her sex, by making unwanted sexual advances, and then raising her rent and evicting her when she refused his advances.

More specifically, plaintiff, who was 44 years of age at the time the events described herein began, alleges that, prior to the execution of the lease agreement, Maye showed her the subject apartment and gave her a rental application. Plaintiff

---

[1] Jones and Maye are husband and wife, though plaintiff did not learn this fact until her deposition.

decided not to apply for the apartment, after learning that she would be required to provide a background check, as well as a credit check.  Plaintiff also lacked the necessary funds to pay the requested security deposit.  However, Maye called plaintiff and told her that "he enjoyed her company," that he "wanted her to have the house," and that he would allow her to pay the security deposit over time.  Maye also purchased appliances for the apartment, with the understanding that plaintiff would repay him over time.  Plaintiff signed a lease agreement in or about October 2002, which required her to pay monthly rent of $675.00.  The lease indicated that the lessor was TW Jones Development.  However, plaintiff believed at all times that Maye was the owner and landlord of the property, based upon Maye's representations to her. (Glover Dep. 17-18)

     Plaintiff contends that Maye made sexual advances toward her, both before and after she became a tenant.  For example, she states that before she signed the lease, Maye told her that he "couldn't wait for her to move in so he could spend more time with her," that he "wanted to make mad passionate love to her." (Glover Dep. 39)  Plaintiff claims that she was "disgusted" by these comments, but proceeded to rent the apartment nonetheless.  According to plaintiff, "it wasn't to a point where I was scared. I thought at that time he was just – I was a single female, he was looking for a play so I kind of blew him off a lot, but I never felt threatened or intimidated by him." (*Id*. at 38-39) After plaintiff moved into the apartment, Maye came by uninvited on several occasions, but eventually stopped doing this. (*Id*. at 48, 51)  Plaintiff alleges that on these occasions, Maye asked for hugs and put his arm around her. (*Id*. at 63-64)  Plaintiff also contends that on two occasions Maye kissed her on the mouth. (*Id*. at 57-60) According

3

to plaintiff, the last physical contact that she had with Maye was in 2003. It was before she renewed the lease for another year, and on that occasion Maye kissed her. (*Id*. at 89-90)

Plaintiff claims that after Maye stopped visiting her, he continued driving by the apartment (Glover Dep. at 48) and calling her on the telephone. For example, she states that in January 2003, Maye called her repeatedly and asked her to take an out-of-town trip with him. (*Id*. at 55) Plaintiff further alleges that in February 2003, Maye invited her to take a trip with him, and that he told her that he "had to have her" and wanted to "make her his woman." (*Id*. at 79) Plaintiff states that she eventually "stopped taking his phone calls altogether." (*Id*. at 55)

In or about August 2004, Maye asked plaintiff to bake him a lemon meringue pie, in exchange for $40. Plaintiff agreed, and accompanied Maye to the store in his truck to buy the ingredients. (Glover Dep. 94-97) Plaintiff stated that "so much time had passed" since Maye had made unwanted advances toward her that she did not see any harm in baking him a pie. (*Id*. at 96) Plaintiff further stated that, at the time, "almost a year had passed since [she and Maye] had had any conversations or any contact at all." (*Id*. at 98) Plaintiff also reiterated that she did not feel threatened by Maye, because she "knew he wouldn't do anything to physically hurt [her]." (*Id*.) Additionally, plaintiff stated that she was "trying to be a little more agreeable" because she knew that she "was coming up for a lease renewal," and was "just trying to see where [Maye's] mind was at." (*Id*. at 98)

Plaintiff alleges that a few days later Maye called her and again asked her to

accompany him on an out of town trip, so that he could "make love to [her]." (*Id*. at 99) Plaintiff refused the invitation. Shortly thereafter, Maye notified plaintiff that he was increasing her rent $20 per month, from $675 to $695, effective October 1, 2004. Plaintiff's lease term did not actually end until October 31, 2004, and Maye apparently mistakenly stated that the rent would increase on October 1st instead of on November 1st. (*Id*. at 152) In any event, the proposed rent increase was the first in two years.

At around this same time, plaintiff was late in making both the August and September rent payments.[2] Plaintiff contends that she could not afford Maye's announced rent increase, and that she sent him a letter containing a counter-proposal.[3] When Maye did not respond to her proposal, plaintiff sent him a notice, on October 31, 2004, the last day of her rental term, indicating that she would vacate the premises in 30 days, which would have been 30 days beyond the term of the lease. (*Id*. at 176) Plaintiff does not claim to have made any payment for November's rent.

Maye and TW Jones Development commenced eviction proceedings in Rochester City Court. The complaint in the eviction proceeding sought rent for both October and November, in addition to late fees and court costs. Rochester City Court issued an eviction warrant, effective November 26, 2004, and plaintiff vacated the apartment on or about that date. Maye entered the premises and changed the locks on or about November 30, 2004. Plaintiff believes that she was justified in remaining in the

---

[2]Plaintiff admitted that her rent payments were late in June 2003 and in August and September of 2004, and that she had written several checks to May which had bee returned for insufficient funds. (Glover Dep. 143-148, 150, 159-60)

[3]Plaintiff also claims that she sent Maye a check for $695 for October's rent. However, it does not appear that Maye ever collected this amount, since as discussed below, he sought October's rent as part of the eviction proceeding in Rochester City Court.

premises past the term of her lease, and that the eviction was unjustified, because her security deposit would have "covered" rent for November, as well as outstanding late fees that she owed to Maye. (Glover Dep. 178-79). Plaintiff also blames Maye for the loss of some personal property that she could not retrieve because he had changed the locks, though she admits that she never contacted him about the property. (*Id*. at 129, 179)

Plaintiff commenced the subject action on March 22, 2005, alleging violations of the Fair Housing Act and the New York State Human Rights Law. Defendants Jones and Mayes, represented by the same counsel, filed an answer to the complaint, which contained no affirmative defenses. (*See*, Docket [#3]) The undersigned then referred the matter to the Honorable Jonathan W. Feldman, United States Magistrate Judge, for the handling of all non-dispositive pretrial matters. Judge Feldman issued a Scheduling Order [#9], which, *inter alia*, directed that "all motions to join other parties and to amend the pleadings" be filed by September 30, 2005, and that all factual discovery be completed by March 13, 2006. The Scheduling Order further stated: "No extension of the above cutoff dates will be granted except upon written application, <u>made prior to the cutoff date</u>, showing good cause for the extension." (Emphasis in original) Judge Feldman later extended the discovery deadline to May 15, 2006, and directed that all dispositive motions be filed by August 9, 2006. (*See*, Amended Scheduling Order [#11]) Judge Feldman subsequently issued a Second Amended Scheduling Order [#12] on May 5, 2006, in which he further extended the deadline for discovery to July 17, 2006, and the deadline for dispositive motions to October 10, 2006.

Plaintiff filed the subject motion to amend the complaint on May 15, 2006. As to that, plaintiff seeks leave to amend the caption to add Tracey Wynell Jones individually, and Marvin Maye d/b/a Maye Development, as defendants. In support of the application, plaintiff stated that "[d]ocumentation gathered through discovery" prompted the motion, and that defendants would not be prejudiced by an amendment.

New counsel appeared for Jones and Maye on June 20, 2006 and June 23, 2006, respectively. Jones then filed the subject cross-motion [#18], seeking an order denying plaintiff's motion to amend, permitting Jones to amend her answer to include statute of limitations and estoppel defenses, and granting Jones judgment on the pleadings and/or summary judgment. In support of the motion, Jones contends that she is neither personally nor vicariously liable for Maye's actions, that most of plaintiff's claims are time-barred and/or barred by collateral estoppel, and that the complaint fails to state actionable claims of sexual harassment. For example, Jones contends that plaintiff's deposition establishes that any harassment by Maye was insufficient to create a hostile environment. Maye also filed his subject cross-motion [#19], seeking an order denying plaintiff's motion to amend, and granting Maye summary judgment or, in the alternative, permitting him to file an amended answer containing affirmative defenses. In support of his application for summary judgment, Maye contends that most of plaintiff's claims are time-barred, and alternatively, that the claims are barred by collateral estoppel and "fail to constitute a discriminatory housing practice."

The motions were briefed and counsel appeared before the undersigned for oral argument on October 27, 2006. The Court has thoroughly considered the parties' submissions and the arguments of counsel.

ANALYSIS

The Court will first consider the opposing motions to amend the pleadings. Motions to amend pleadings are generally governed by Rule 15(a) of the Federal Rules of Civil Procedure. It is well settled that "[l]eave to file an amended complaint shall be freely given when justice so requires, Fed.R.Civ.P. 15(a), and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.* 244 F.3d 104, 110 (2d Cir. 2001) (*quoting Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); internal quotation marks omitted). However, where a party seeks to amend his pleading beyond the deadline set by the court in a scheduling order, the liberal standard set forth above does not apply. Instead, the moving party must establish "good cause":

> [D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause. Moreover, . . . a finding of "good cause" depends on the diligence of the moving party.

*Parker v. Columbia Pictures Industries*, 204 F.3d 326, 340 (2d Cir. 2000). As the Circuit Court noted in the *Parker* decision, allowing pleadings to be amended past the court-ordered deadline without a showing of good cause "would render scheduling orders meaningless.") *Id.* (*quoting Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir.1998)).

Pursuant to Magistrate Judge Feldman's Scheduling Order [#9], all motions to amend pleadings were to be filed by September 30, 2005. That deadline was never extended. In order for their motions to amend to be granted, therefore, the parties must

demonstrate good cause. Plaintiff contends that she has shown good cause, because it was necessary for her to obtain discovery before moving to amend. However, the Court rejects that argument, since the records upon which plaintiff's proposed amendments are based, *i.e.*, a real estate deed and an assumed-name certificate pursuant to New York General Business Law § 130, were, at all times in this litigation, publicly-filed documents. (*See*, Exhibits to Agola Declaration [#15]) Plaintiff's motion to amend is denied.[4]

As for defendants, they contend that they have demonstrated good cause for seeking amendment of their answers beyond the deadline imposed by Judge Feldman, since new counsel was only recently retained. While the Court is sympathetic to new counsel in this regard, they are bound by the actions of their predecessor. To hold otherwise would be to allow a party to manufacture "good cause" at any time simply by switching counsel. Though there is absolutely no suggestion of that occurring here, defendants' motions are denied.

The Court will now consider defendants' applications for summary judgment, and plaintiff's cross-motion pursuant to Rule 56(f). The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

---

[4]During oral argument, defense counsel indicated that plaintiff's primary counsel, Ms. Agola, had orally stated that she intended to withdraw the motion to amend as to Tracy Jones. Mr. Bressler, appearing of counsel to Ms. Agola, further indicated that he believed that the motion should be withdrawn as to Maye Development, though he stated that he wished to speak with Ms. Agola about the matter. To date, the Court has heard nothing further regarding the withdrawal of the motion. While the Court believes that it is plaintiff's intention to withdraw the application, it will nonetheless deny the motion since the docket does not currently reflect such a withdrawal.

the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249; *see also*, FED. R. CIV. P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). The parties may only carry

their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

When a party is unable to produce affidavits in opposition to a summary judgment motion, he may make an application pursuant to Rule 56(f), which states:

> **When Affidavits are Unavailable**. Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

FED. R. CIV. P. 56(f). In this Circuit, the requirements for obtaining relief under Rule 56(f) are as follows:

> [A] party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing '(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003) (citations omitted).

Sexual harassment claims are cognizable under the FHA and the NYHRL. *Rich v. Lubin*, No. 02 Civ. 6786(TPG), 2004 WL 1124662 at *4 (S.D.N.Y. May 20, 2004) ("The FHA prohibits discrimination against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of sex." 42 U.S.C. § 3604(b). Sexual harassment

11

constitutes discrimination in the terms, conditions, or privileges of rental of a dwelling on the basis of sex.") (internal quotation marks omitted); *see also, People of State of N.Y. by Abrams v. Merlino*, 694 F.Supp. 1101,1104 (S.D.N.Y. 1988) (claims of sexual harassment are actionable under both the FHA and the NYHRL).

In the instant case, plaintiff claims that she was subjected to two types of sexual discrimination: hostile environment and *quid pro quo*. As to these claims,

> [t]he legal standard for sexual harassment claims under the FHA has been analogized in the Second Circuit to the standard pertaining to hostile work environment claims under Title VII. Thus, in order to prevail in a hostile environment sexual harassment claim, [plaintiff] must establish that she was subjected to harassment that was sufficiently pervasive and severe so as to create a hostile environment, and that a basis exists for imputing the allegedly harassing conduct to the defendants.

*Rich v. Lubin*, 2004 WL 1124662 at *4 (citations omitted). *Quid pro quo* harassment, on the other hand, "occurs when housing benefits are explicitly or implicitly conditioned on sexual favors." *Honce v. Vigil*, 1 F.3d 1085, 1089 (10th Cir. 1993) (citation omitted). The foregoing elements pertain to claims under the NYHRL as well.

As to vicarious liability for sexual harassment claims in the housing context, the law pertaining to FHA claims was recently stated by the Second Circuit as follows:

> In order to avoid predicating liability for Title VIII of the Civil Rights Act of 1968 violations on the vagaries of state law, the question whether an agency relationship exists for purposes of the Fair Housing Act is determined under federal law. Agency is a legal concept that depends on the existence of three elements: (1) the manifestation by the principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal is to be in control of the undertaking. The question whether an agency relationship exists is highly factual, however, and can turn on a number of factors, including: the situation of the parties, their relations to one another, and the business in which they are engaged; the general usages of the business in question and the purported principal's business methods; the

> nature of the subject matters and the circumstances under which the business is done.

*Cleveland v. Caplaw Enter.*, 448 F.3d 518, 522 (2d Cir. 2006) (citations and internal quotation marks omitted). The rule for vicarious liability under the NYHRL, however, is different: "Under New York law, in order to recover against an [owner], the complainant must demonstrate that the [owner] acquiesced in the discriminatory conduct or subsequently condoned it." *Father Belle Community Ctr. v. New York State Div. of Human Rights on Complaint of King*, 221 A.D.2d 44, 53, 642 N.Y.S.2d 739, 746 (4th Dep. 1996); *Vitale v. Rosina Food Prods. Inc.*, 283 A.D.2d 141, 143, 727 N.Y.S.2d 215, 217 -218 (4th Dept. 2001) ("In order to hold a defendant liable under New York law for alleged pervasive harassment, a plaintiff must prove that the employer had knowledge of and acquiesced in the discriminatory conduct of its employee.") (citations and internal quotation marks omitted); *Heskin v. Insite Adver., Inc.*, No. 03 Civ.2598 GBD AJP, 2005 WL 407646 at *23 (S.D.N.Y. Feb. 22, 2005) ("Under § 296 of the NYSHRL . . . an employer cannot be held liable for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it.") (citations and internal quotation marks omitted); *but see, e.g., Perks v. Town of Huntington*, 251 F.Supp.2d 1143, 1159 (E.D.N.Y. 2003) (Applying Title VII standard for vicarious liability to NYHRL claims.)

In the instant case, both defendants contend that plaintiff's allegations fail to establish actionable sexual harassment as a matter of law, and Jones further contends that she cannot be held vicariously liable for Maye's actions. However, based upon the applicable principles of law, the Court finds that plaintiff is entitled to conduct further

discovery before responding to defendants' summary judgment motions.[5]  Most notably, plaintiff has not yet been able to depose Ms. Jones or Mr. Maye.  Consequently, plaintiff's Rule 56(f) application is granted and defendants' summary judgment motions are denied without prejudice.

## CONCLUSION

Plaintiff's motion to amend the complaint [#13] and defendants' cross-motions to amend their answers [#18][#19] are denied.  Plaintiff's motion [#26] pursuant to Rule 56(f) is granted, and defendants' motions for summary judgment are denied without prejudice to their being renewed once discovery is completed.  All discovery in this case, including depositions, shall be completed on or before **January 12, 2007**.  All motions to compel discovery shall be filed at least 30 days prior to the discovery deadline.  All dispositive motions shall be filed and served on or before **March 12, 2007**.  In the event that no dispositive motions are filed by that date, counsel are to contact the Court in writing to request a Pretrial Conference.

So Ordered.

Dated: Rochester, New York
       November 3, 2006           ENTER:


                                  /s/ Charles J. Siragusa
                                  CHARLES J. SIRAGUSA
                                  United States District Judge

---

[5] Affirmative defenses are generally waived if not pled as required by Rule 8(c). *See, National Market Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 526 (2d Cir. 2004) ("If an affirmative defense is neither pled nor tried with the parties' consent, the defense is usually waived.") Consequently, to the extent that defendants are relying on the affirmative defenses of collateral estoppel and statute of limitations, those appear to have been waived.